BARRY J. PORTMAN
Federal Public Defender
CYNTHIA C. LIE
Assistant Federal Public Defender
160 West Santa Clara Street, Suite 575
San Jose, CA  95113
Telephone: (408) 291-7753

Counsel for Defendant CARRILLO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR-07-00304 JF/PVT |
| | ) | |
| Plaintiff, | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| vs. | ) | |
| | ) | |
| THOMAS JERRY CARRILLO, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## INTRODUCTION

Defendant Thomas Jerry Carrillo struggled through most of his adulthood with the effects of serious depressive and anxiety disorders that were until recently untreated. His prior criminal history, consisting exclusively of misdemeanors and a single nonviolent felony theft conviction, his prior performance on less-than-rigorous state probation supervision, and his succession of abbreviated job placements, all suggest the extent to which his mental condition has impaired him. In contrast, his performance under federal pretrial supervision in the instant case, while he has been under the constant care of medical and counseling professionals who understand his recent complex history with psychotropic medications and their combined effect (intended and unintended) on behavior, has been exemplary, both before and after the termination of a condition of home confinement. Accordingly, Mr. Carrillo respectfully submits that he merits

the sentence agreed to by the parties pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure – a five-year term of probation with no further period of confinement.

## ARGUMENT

The defense, in its April 21, 2008 objections to the Probation Office's draft presentence report, cited Mr. Carrillo's long history of mental illness as a substantially mitigating factor, particularly in view of his recent success in treatment. Pursuant to Title 18, United States Code Section 3553(a) and the Supreme Court's recent decisions in *United States v. Booker*, 543 U.S. 220 (2005), *Kimbrough v. United States*, 128 S.Ct. 558 (2007), and *Gall v. United States*, 128 S.Ct. 586 (2007), this Court has ample discretion to honor the parties' negotiated disposition based upon this factor. Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to achieve the goals of sentencing. 18 U.S.C. § 3553(a). To arrive at such a sentence, the court is directed to consider the following factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the crime, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with education, training, and medical care; (3) the kinds of sentences available; (4) the applicable Sentencing Guidelines, including any relevant policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to any victims of the offense. *See id.*

Mr. Carrillo's mental health challenges and his recent success in responding to them are the most compelling aspect of his history and characteristics. He in retrospect recognizes that the signs of his mental health challenges began emerging in 1990, at the age of 24, prior to the onset of his criminal history. Dealing with the disintegration of the marriage that produced the two daughters with whom he enjoys a positive and supportive relationship, Mr. Carrillo experienced panic attacks and agoraphobic anxiety, which kept him tethered to his home for a time. PSR ¶56. At that time, he failed to appreciate that treatment might be available to alleviate what he was

experiencing. His work history from the 1990s reflected an inability to maintain employment for more than a few months at a time. PSR ¶¶67-74. His criminal history reflected corresponding difficulty complying with tasks or requirements imposed as special conditions, as well as a series of misdemeanor offenses. PSR ¶¶26-33. It was not until 1999, when he was incarcerated in Nevada for possession of stolen luggage, that Mr. Carrillo was finally diagnosed by a mental health professional. PSR ¶55.

His 30-month term of employment with Airborne Express/DHL represents the longest period that he has been able to maintain steady employment, and he voluntarily resigned that position in the course of this criminal prosecution, against the urging of his Teamsters Union Local. PSR ¶66. Notwithstanding DHL management accounts of difficulties with unidentified coworkers, those fellow drivers and/or managers interviewed by the Federal Public Defender reported that Mr. Carrillo was reasonably well-liked and a good worker. Exh. G. While he was employed there, including at the time of his offense conduct, Mr. Carrillo was under the care of psychiatrist Phillip Grossi, M.D., who was having Mr. Carrillo on different combinations of medications to address his mental health issues. One of the medications Dr. Grossi prescribed for Mr. Carrillo, beginning on December 15, 2004, was Luvox, quadrupling the dosage in the initial stages. Exh. A. On October 20, 2006, Dr. Grossi discontinued the Luvox and prescribed Parnate instead, to commence after a 10-day interval. Exh. B. Mr. Carrillo began taking Parnate on October 30, 2006, the day before the offense date, and was admitted that evening to O'Connor Hospital following a syncopal episode that Dr. Grossi attributes to the change in medications. Exhs. C and D; PSR ¶57. He experienced another syncopal episode on November 1, 2006, the day after the offense conduct, which his primary care physician, Jeffrey Blue, M.D., likewise attributed to the change in medications. Exh. E; PSR ¶7. Dr. Grossi discontinued Parnate on November 2, 2006. Exh. C. Mr. Carrillo discontinued treatment with Dr. Grossi at the end of February 2007.

Shortly after his arrest, initial appearance and pretrial release in the instant case, Mr.

1  Carrillo resumed treatment in compliance with the Order Setting Conditions of Release issued by
2  the Honorable Patricia V. Trumbull on June 11, 2007.  His psychiatrist from that time to the
3  present has been Marvin Rubenstein, M.D.; in addition, Mr. Carrillo sees a licensed clinical
4  psychologist.  Dr. Rubenstein's assessment of Mr. Carrillo's psychopharmaceutical history is that
5  the interval between Mr. Carrillo's cessation of Luvox and his commencement of Parnate was of
6  insufficient duration to avoid a host of complications, some of which are consistent with Mr.
7  Carrillo's commission of the instant offense during his short-lived Parnate usage.  Exh. F.
8        In consideration of some of these circumstances, as well as the relatively low offense
9  level, the parties negotiated the existing 11(c)(1)(C) agreement, with the specific understanding
10 that its terms would include no further confinement, whether in BOP custody or in Mr. Carrillo's
11 home.  The parties further stipulated to modification of Mr. Carrillo's conditions of pretrial
12 release, to delete the requirement of home confinement with which Mr. Carrillo had complied for
13 nine months, under the custodianship of his mother and without electronic monitoring.  PSR ¶4.
14       Although the need for just punishment is one of the factors to be considered under
15 §3553(a), it is not the sole factor or even the most important: no single factor identified in
16 §3553(a) is entitled to greater weight than any other. *United States v. Carty*, – F.3d –, 2008 WL
17 763770 (9th Cir. Mar. 24, 2008) (en banc) at *4.  Moreover, a sentence of probation in the instant
18 case would provide sufficient punishment without exceeding that necessary to achieve all of the
19 other objectives that Section 3553 was intended to further.  As the sentencing court in *Gall*
20 observed, "probation, rather than 'an act of leniency,' is a 'substantial restriction of freedom.'"
21 *Gall*, 128 S.Ct. at 593.  The district court went on to explain:

22     [The defendant] will have to comply with strict reporting conditions along with a
    three-year regime of alcohol and drug testing.  He will not be able to change or make
23     decisions about significant circumstances in his life, such as where to live or work, which
    are prized liberty interests, without first seeking authorization from his Probation Officer
24     or, perhaps, even the Court. Of course, the Defendant always faces the harsh
    consequences that await if he violates the conditions of his probationary term.
25
   *Id.*  The Supreme Court concurred, noting that probationers are "subject to several standard
26

conditions that substantially restrict their liberty." *Id.* at 595.  It should be noted that Mr. Carrillo has agreed to a five-year term of probation, a period of supervision far in excess of what would be available to the Court under 18 U.S.C. §3583(b)(2).

## CONCLUSION

Mr. Carrillo's psychiatrist of the past 11 months, his prior psychiatrist and his general internist have each concluded that in the three-day period bracketing the instant offense, Mr. Carrillo was experiencing significant complications resulting from a recent and short-lived change in his psychotropic medications.  His current treating psychiatrist further specifies that the failure to fully clear Mr. Carrillo's system of a drug he had been taking for almost two years before prescribing a contraindicated new drug was a factor contributing to Mr. Carrillo's commission of the offense.  These factors, together with Mr. Carrillo's successful completion of nine months home confinement, support the Court's acceptance of the terms previously agreed to by the parties pursuant to 11(c)(1)(C), despite the slight adjustment the agreement represents from the Zone B Guideline range of 6 to 12 months ordinarily applicable to an offense of this magnitude and a criminal history comparable to Mr. Carrillo's.  For these reasons, Mr. Carrillo respectfully requests that the Court impose probation with no further term of confinement.

Dated: May 8, 2008

                              Respectfully submitted,

                              BARRY J. PORTMAN
                              Federal Public Defender

                              s/
                              CYNTHIA C. LIE
                              Assistant Federal Public Defender